UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JENIFER-ASHLEY ANDREA**
**ROBINSON,**

    *Plaintiff*,

v.                                                              Case No. 5:25-CV-0758-JKP

**CITY OF CASTLE HILLS, TEXAS,**

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions: (1) a Motion to Dismiss (ECF No. 10) filed by the City of Castle Hills, Texas, ("the City") and (2) an Opposed Motion to Remand (ECF No. 12) filed by Jenifer-Ashley Andrea Robinson ("Robinson"). The City has filed a response to the motion to remand. Plaintiff has not filed a reply brief and the time for doing so has passed. Some background is warranted to put the motions in context.

This case concerns a state dispute instituted by the City against Robinson. The lengthy and convoluted litigation history appears largely undisputed. Litigation began when the City filed a tax suit in 2012, added Robinson as a defendant to that suit in 2014, served Robinson with that suit in March 2017, prompting her to file an answer in April 2017 and a counterclaim in May 2017, alleging violations of due process. The City commenced a second suit against Robinson in November 2017, which prompted an answer in January 2018. The City's two state actions were consolidated into one action in February 2019, along with Robinson's counterclaim. Ultimately, the City nonsuited its claims against Robinson without prejudice on April 1, 2025. On June 12, 2025, Robinson amended her counterclaim, prompting the City to remove the counterclaim to this Court on July 2, 2025.

After the City nonsuited its claims against Robinson, the only claims remaining in the state action were her counterclaims against the City. The City contends that when Robinson amended her counterclaims, she added new federal claims; thus, providing a basis for removal for the first time. Robinson disputes that her amendment added new claims. Nevertheless, the amendment resulted in the City removing the state case to this Court alleging subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331. The City thereafter moved to dismiss this case on September 19, 2025. In response to the motion to dismiss, Robinson filed her motion to remand alleging a lack of subject matter jurisdiction on September 30, 2025.

Both parties agree to the basic procedural history of this case. Indeed, the City argues that the issues raised by Robinson are mere procedural issues in the removal of this case and were waived by her failure to seek remand within thirty days of removal. But that characterization ignores the realities of the state case.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *accord Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). "Jurisdiction is essentially the authority conferred by Congress to decide a given type of case one way or the other." *Hagans v. Lavine*, 415 U.S. 528, 538 (1974). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

"Original jurisdiction over the subject matter is mandatory for the maintenance of an action in federal court." *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995). Parties "may neither consent to nor waive federal subject matter jurisdiction." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d

848, 850 (5th Cir. 1999). In the context of a removed case, 28 U.S.C. § 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In fact, when a jurisdictional issue is presented, "the *only* issue the court may consider is that of jurisdiction itself." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016) (addressing the presence of a nondiverse party).

The City seeks removal and federal jurisdiction based on federal counterclaims asserted by Robinson in state court. As a counter-defendant to the claims sought to be removed, the City has no right to removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 106–09 (1941), *superseded by statute on other grounds as recognized in Breuer v. Jims Concrete, Inc.*, 538 U.S. 691, 697 (2003). In characterizing the City as a counter-defendant in the state action, the Court relies on how that term is used in the federal courts, not on any procedural label utilized by the state court. In federal court, a plaintiff is the party initiating the suit against a defendant and when a defendant answers and files a counterclaim, the plaintiff also becomes a counter-defendant. That the plaintiff later nonsuits its claims does not automatically eliminate the counter-defendant designation or transform the counter-defendant into a de facto defendant. The City hauled Robinson into state court where Robinson appropriately counterclaimed, thereby making the City a counter-defendant.

The City contends that its nonsuit combined with Robinson's later addition of federal claims to her counterclaims effectively realigned the parties thereby putting the City in the position of a defendant and thus eligible to remove the case to federal court. While the City provides no authority for such de facto realignment, it argues that realignment doctrine supports its removal. Resp. at 6. Indeed, the Supreme Court has recognized that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who

defendants." *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941). Courts must "look beyond the pleadings, and arrange the parties according to their sides in the dispute" and "[t]hese familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts." *Id*. at 69–70. And even though realignment is most often used in the diversity context, the City contends that it is not exclusive to that context and provides authority for the lack of exclusivity. Resp. at 6. Furthermore, "federal law determines who is plaintiff and who is defendant" and a state's "procedural provisions cannot control the privilege of removal granted by the federal statute." *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954).

The City thus urges the Court to look to the party that was driving the litigation rather than the labels applied in state court. Resp. at 7. It contends that by removing its claims for affirmative relief via the nonsuit, it became, in substance the defendant, and Robinson became "the driving force of the suit, 'the institution and continuance of the proceedings depend' solely upon her will." *Id*. at 8 (quoting *Stude*, 346 U.S. at 580). But the Supreme Court decided *Stude* in the context of condemnation proceedings in which "the words plaintiff and defendant can be used only in an uncommon and liberal sense." 346 U.S. at 579–80. Nothing in this case suggests that the state's use of the terms plaintiff and defendant in the context of this case justify viewing the City as the defendant. The City initiated the suit, Robinson counterclaimed, the City nonsuited its claims, and Robinson amended her counterclaims, resulting in the City removing the state case here. That the City nonsuited its claims does not erase the fact that it initiated the state action prompting Robinson to countersue. That Robinson may be the driving force for this action continuing is simply the byproduct of the City's own actions in nonsuiting its claims. This differs materially from the cited cases in which courts have realigned the parties.

4

The City next urges the Court to consider that the jurisdiction of the federal court is determined by the operative pleading, not the suit at its inception. Resp. at 8. Recent Supreme Court precedent supports this legal principle, *see Royal Canin*, 604 U.S. at 37, and this Court has no disagreement with it. But the principle does not help the City in this instance. That it nonsuited its claims does not transform it from a plaintiff who initiated an action to a defendant defending an action brought against it. Its nonsuit changed its pleading. But the nonsuit did not alter Robinson's pleading, which still asserted a counterclaim against a counter-defendant. The nonsuit, furthermore, did not erase the litigation history between the parties. The City reads too much into *Royal Canin*.

Realignment of parties does not simply magically take place when a plaintiff in an action nonsuits its claims, leaving itself as only a counter-defendant in the case. No judicial action has ordered or recognized any such realignment.[1] At the time of removal, the City was a counter-defendant to Robinson's counterclaim. It was not a defendant as it wishes to be. Under the facts of this case, the Court views the matter as much more than a mere procedural defect that the City was an improper party to request removal. "This is more than a procedural matter that may warrant remand for procedural non-compliance – the removal here touches upon the authority of the Court to even adjudicate any non-jurisdictional matter in this removed case." *Leos v. Bexar Cnty.*, No. SA-22-CV-0574-JKP, 2022 WL 5236839, at *2 (W.D. Tex. Oct. 4, 2022) (addressing removal in a different context).

In general, federal counterclaims do not provide a jurisdictional basis for removal. The Supreme "Court has long held that a district court, when determining whether it has original

---

[1] Because the parties were not realigned in state court, this Court has no need to decide whether such realignment would permit the City to remove the realigned case. Such a hypothetical realignment at the state level could instead require a federal court to look beyond the state label to ascertain whether the City should be viewed as a defendant within the meaning of the removal statute.

5

jurisdiction over a civil action, should evaluate whether that action could have been brought originally in federal court." *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) (citing *Mexican Nat'l R. Co. v. Davidson*, 157 U. S. 201, 208 (1895); *Tennessee v. Union & Planters' Bank*, 152 U. S. 454, 461 (1894)). Accordingly, the district courts "evaluate whether the plaintiff could have filed its operative complaint in federal court, either because it raises claims arising under federal law or because it falls within the court's diversity jurisdiction." *Id*.

The City seeks to remove the state case under 28 U.S.C. § 1441(a) and (c), and § 1443. Section 1441(a) does not permit removal of a state action "based on counterclaims at all, as a counterclaim is irrelevant to whether the district court had 'original jurisdiction' over the civil action." *Home Depot*, 587 U.S. at 442; *accord Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ("Nor can federal jurisdiction rest upon an actual or anticipated counterclaim."). Reliance on § 1441(c) likewise does not help because the same analysis applied to § 1441(a) in *Home Depot* applies in the context of § 1441(c). *See Bowling v. U.S. Bank Nat'l Ass'n, As Tr. for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2007-SP2*, 963 F.3d 1030, 1038 (11th Cir. 2020) (recognizing that *Home Depot* has the effect of abrogating binding Fifth Circuit precedent, *Carl Heck Engineers, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133 (5th Cir. 1980)). In short, at least with respect to § 1441(a) and (c), "the federal claim or right that provides the predicate for removal cannot appear for the first time in the Defendant's answer or as a counterclaim." *Guthrie v. Finnegans Wake Irish Pubs, LLC*, No. 3:09-CV-39-MCR-EMT, 2009 WL 997066, at *6 (N.D. Fla. Apr. 14, 2009) (recommendation of Mag. J.) *adopted by* 2009 WL 1605422 (N.D. Fla. June 4, 2009).

For these reasons, Robinson's counterclaims provide no basis for original jurisdiction in this Court. While § 1443 may provide a basis for removal at times and thus satisfy subject matter

jurisdiction concerns, the circumstances of this case make it inapplicable. "Section 1443 provides for federal removal jurisdiction when a defendant otherwise lacks an enforcement remedy to protect his or her federal civil rights related to racial equality" as set out in two subsections. *Tuter v. Tuter*, No. 4:25-CV-00075-ALM-AGD, 2025 WL 2600011, at *4 (E.D. Tex. Aug. 21, 2025) (recommendation of Mag. J.) *adopted by* 2025 WL 2601545 (E.D. Tex. Sept. 8, 2025). The second subsection "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 824 (1966). Because § 1443(2) confers no privilege of removal on the City, any right to removal by the City must therefore fall under § 1443(1).

Removal under § 1443(1) requires two things: (1) "it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality'" and (2) it must appear "that the removal petitioner is 'denied or cannot enforce' the specified federal rights 'in the courts of (the) State.'" *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (quoting *Georgia v. Rachel*, 384 U.S. 780, 792, 803 (1966)). Courts have consistently construed this provision "narrowly to require strict satisfaction of both the 'civil rights' element and the 'enforcement' element intrinsic within [the provision]" *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983). A removing party cannot satisfy the two-pronged test of § 1443(1) when that party has not personally been denied any right or cannot personally enforce a federal right in state court. Because the City here relies on federal claims asserted by Robinson and not itself, § 1443(1) confers no privilege of removal upon the City.

For these reasons § 1443(1) and (2) are inapplicable. And when that is the case, "the Court lacks subject matter jurisdiction to adjudicate" the matters sought to be removed through § 1443.

*Portfolio Recovery Assocs., LLC v. Dassero*, No. EP-19-CV-231-KC, 2020 WL 13430491, at *1 (W.D. Tex. Jan. 2, 2020). Because this court lacks "original jurisdiction over this case, a finding that removal was improper deprives th[e] court of subject matter jurisdiction and obliges a remand under the terms of § 1447(c)." *International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991) (internal citation omitted) (addressing removal under § 1442) *superseded by statute on other grounds as stated in Thompson v. Army & Air Force Exch. Serv.*, 125 F.4th 831, 834 n.3 (7th Cir. 2025); *accord Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1546 (5th Cir. 1991) (addressing removal under § 1441(b) in conjunction with the "saving to suitors" clause of 28 U.S.C. § 1333(1)); *Akhlaghi v. Berry*, 294 F. Supp. 2d 1238, 1241 (D. Kan. 2003) (addressing removal under § 1443).

The City wants the Court to recognize a de facto realignment of the parties once the City nonsuited its claims against Robinson. This would arguably cure the issue regarding counterclaims. But for the reasons already stated, the Court declines to accept a de facto realignment of the parties. At the time of removal, the City may have been only a counter-defendant having nonsuited the claims that it had had as a plaintiff, but that does not mean that there has been any de facto realignment or that Robinson's federal counterclaims provide a basis for removal. The City's reliance on *Baris* and *Mackay v. Uinta Dev. Co.*, 229 U.S. 173 (1913) is misplaced. The circumstances of those cases are factually and materially different.

In *Baris*, the defendants of a state court action "removed the matter to federal district court" while asserting diversity jurisdiction over the "savings to suitors" admiralty and maritime action. 932 F.2d at 1542–43. Although state and federal courts have concurrent jurisdiction over such actions, removal of such a state action cannot be had "in the absence of diversity." *Id*. at 1543. As was the case in *Mackay*, "the federal district court would have had original jurisdiction if the action

had been filed there in the first instance." *Id*. at 1545. *Baris* recognized

> at least three cognizable combinations of state/federal jurisdictional defects in the context of a removed proceeding: (1) where the state court has jurisdiction but the federal court lacks original and removal jurisdiction; (2) where both state and federal courts have original jurisdiction but there is no federal removal jurisdiction; and (3) where both state and federal courts lack jurisdiction

*Id*. at 1544. And, assuming that there was an improper removal, the case before the circuit fell into the second category. *Id*. Accordingly, all defects of removal were subject to waiver. *Id*. at 1544–45.

In *Mackay*, the Supreme Court considered competing claims by the parties either which "could have been interposed as a counterclaim to the other; or they could have been determined in different suits," subject to state law regarding recovery of costs in a separate action. 229 U.S. at 174. Mackay, the defendant of the state action, removed the case to federal court on grounds "that the parties were citizens of different states; that the construction of Federal statutes was necessarily involved, and that the amount in dispute, as disclosed by the counterclaim, exceeded" the jurisdictional amount. *Id*. After losing in federal court, Mackay appealed. *Id*. at 174–75. The appellate court thereafter certified various questions to the Supreme Court "as to whether Mackay could remove the case to the United States court." *Id*. at 175. The Supreme Court affirmatively answered the only question that mattered to it, and found that, "while the parties could not give jurisdiction by consent, there was the requisite amount and the diversity or citizenship necessary to the give the United States circuit court jurisdiction to hear the cause." *Id*. at 175–76.

*Baris* recognized that *Mackay* considered that the case had been "irregularly removed" and "the matter was not within the removal jurisdiction of the federal district court," even though "the counterclaim exceeded the jurisdictional amount" for diversity jurisdiction, while "the plaintiff's claim did not." 932 F.2d at 1545. *Baris* thus found that *Mackay* "held that as neither party had objected to removal, the district court had subject matter jurisdiction and could entertain the cause,

9

as the counterclaim could have been brought as an original action in federal court in satisfaction of the jurisdictional-amount requirement." *Id*.

One circuit court seems to have limited *Mackay* to circumstances that occur post-judgment. *See Bd. of Regents, Univ. of Tex. Sys., ex rel. Univ. of Tex. at Austin v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1361 n.* (Fed. Cir. 2005). And such limitation is consistent with a later Supreme Court case citing *Mackay*. *See Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1972). In *Grubbs*, the Supreme Court noted:

> Longstanding decisions of this Court make clear, however, that where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

*Id*. It then discussed *Baggs v. Martin*, 179 U.S. 206 (1900) and *Mackay*, *id*. at 702–04, before applying this doctrine and concluding that diversity jurisdiction was present in the district court "if the action had been brought in that court originally," *id*. at 704.

This Court has no need to resolve how *Mackay* or *Baris* may affect the jurisdictional calculus with respect to diversity jurisdiction. Diversity jurisdiction is not at issue in this case. In both of those cases, furthermore, a state court defendant removed the case to federal court. In this case, at the time of removal, the City was a counter-defendant only. There had been no realignment of the parties despite the City non-suiting its claims against Robinson. The City could not have filed its original case against Robinson in federal court. While Robinson could have brought her federal claims in federal court, her counterclaim does not provide subject matter jurisdiction at the time of removal. The Court will not ignore Supreme Court precedent which holds that state-court counterclaims are insufficient of themselves to satisfy original jurisdiction. *See Home Depot*, 587 U.S. at 442; *Vaden*, 556 U.S. at 60. The City, as the party seeking the federal forum, has not carried its burden to show that this Court has original jurisdiction over the case it seeks to remove.

Robinson moves for attorney fee and costs under 28 U.S.C. § 1447(c). Had Robinson timely moved for remand its arguments for fees and costs may have had more force. But by filing her motion past thirty-days of removal, she waived any issue as to procedural irregularities in the removal. The matter thus became purely one of jurisdiction. And in response to the motion to remand, the City explains its position through reliance on *Baris*, *Mackay*, and realignment doctrine. While the Court has found the explanation unpersuasive, it will not find the position objectively unreasonable, especially given the failure of Robinson to file a reply to contest the proffered explanation. It is fair to say that the lengthy litigation history of this case complicates the issues.

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Opposed Motion to Remand (ECF No. 12) and **MOOTS** the Motion to Dismiss (ECF No. 10). The motion is denied only as to the request for attorney fees and costs. It is granted as to remanding this case to state court. By separate order, the Court will remand this case styled as Castle Hills, Texas v. Jenifer-Ashley Andrea Robinson, Cause No. 2017-CI-22569, to the 37th District Court, Bexar County, Texas.

**SIGNED this 22nd day of October 2025.**

*[signature: Jason Pulliam]*
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**